IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-361-BO

| | | |
|---|---|---|
| DISABILITY RIGHTS NORTH CAROLINA, | ) ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, in her official capacity as Executive Director of the NCSBOE, DAMON CIRCOSTA, in his official capacity as Chair of the NCSBOE, STELLA ANDERSON, in her official capacity as Secretary of the NCSBOE, JEFF CARMON III, in his official capacity as Member of the NCSBOE, STACY EGGERS IV, in his official capacity as Member of the NCSBOE, and TOMMY TUCKER, in his official capacity as Member of the NCSBOE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This cause comes before the Court on defendants' motion to dismiss plaintiff's complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief

can be granted. Plaintiff responded and the motion is ripe for adjudication. For the reasons that

follow, defendants' motion to dismiss is denied.

## BACKGROUND

Plaintiff Disability Rights North Carolina ("DRNC") is an independent non-profit

organization that focuses on protecting the voting rights of North Carolinians with disabilities.

DRNC is designated as North Carolina Protection and Advocacy system, which authorizes it to

pursue legal, administrative, and other appropriate remedies to ensure the protection of the rights

of individuals with disabilities. DRNC states that all North Carolina voters with disabilities are constituents of DRNC.

To vote using an absentee ballot in North Carolina, a voter must obtain an absentee ballot request form, complete and return the request form, receive a absentee ballot form in the mail, and complete and mail the absentee ballot. Section 208 of the federal Voting Rights Act states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C.A. § 10508.

Plaintiff DRNC brings this suit to challenge several North Carolina laws that plaintiff claims limit the voting rights of disabled North Carolinians. Specifically, plaintiff alleges that North Carolina laws prohibit voters with disabilities living in facilities like clinics, hospitals, and nursing homes from relying on any person associated with those facilities for assistance with any of the steps required to vote absentee. Plaintiff alleges that thousands of individuals with disabilities in North Carolina are residing in hospitals, clinics, and nursing homes (congregate settings) and need assistance with voting because of their disabilities. Plaintiff states that, often times, facility staff are the only people available to help these individuals with their absentee ballots and should be allowed to provide a trusted source of assistance. Plaintiff brings this suit to enforce the federal right of voters with disabilities to rely on the assistant of their choosing when they vote.

Plaintiff filed its complaint on September 9, 2021, challenging North Carolina's absentee ballot request provisions in N.C. Gen. Stat. §§ 163-230.1, 230.2(e) and 230.3; absentee ballot completion provisions in §§ 163-226.3(a)(4) and (a)(6); and absentee ballot delivery provision in § 163-231(b)(1). Plaintiff alleges that these provisions violate Section 208 of the Voting Rights

2

Act and the Supremacy clause. Plaintiff brings this claim against the North Carolina State Board of Elections and six election officials in their official capacity, pursuant to 42 U.S.C. § 1983. The North Carolina State Board of Elections ("NCSBE") is the state agency responsible for managing and supervising elections in North Carolina. Defendants filed a motion to dismiss on November 1, 2021. The parties filed a joint motion to expedite consideration of the motion to dismiss and to modify the discovery plan on April 26, 2022. The motion to expedite and modify the discovery schedule was granted.

## DISCUSSION

Defendants argue that plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants assert that plaintiff has failed to state a claim because the cited sections of North Carolina law either do not conflict with Section 208 of the Voting Rights Act or, if they do, the conflicts are minimal and intended to serve the same purpose as Section 208.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible."

3

*Twombly*, 550 U.S. at 570. The complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

"[S]tate law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Preemption is found where compliance with both federal and state law is impossible or "where under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 373 (internal quotations and citation omitted). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* In order to state a claim pursuant to the Supremacy Clause, plaintiff in this case must plausibly allege that the cited North Carolina provisions are an obstacle to the accomplishment and full execution of the purpose of Section 208 of the Voting Rights Act or that compliance with both is impossible.

### I. Plain language of Section 208 of the Voting Rights Act

When interpreting a statute, "[t]he first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Section 208 of the Voting Rights Act gives voters who require assistance to vote because of blindness, disability, or inability to read or write the right to "assistance by a person of

4

the voter's choice," so long as the assistant is not the "the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C.A. § 10508.

"Vote" or "voting" is defined by the statute itself as including "all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly." *Id.* § 10310(c)(1). "To vote, therefore, plainly contemplates more than the mechanical act of filling out the ballot sheet. It includes steps in the voting process before entering the ballot box, 'registration,' and it includes steps in the voting process after leaving the ballot box, 'having such ballot counted properly.'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614–15 (5th Cir. 2017) (quoting the Voting Rights Act). In the context of assisting voters in congregate settings like nursing homes, "'voting' includes the delivery of an absentee ballot to a county board of elections as an action 'necessary to make a vote effective'" *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, 476 F.Supp.3d 158, 234–35 (M.D.N.C. 2020) (quoting 52 U.S.C.A. § 10310(c)(1)), *reconsideration denied*, No. 1:20CV457, 2020 WL 6591396 (M.D.N.C. Sept. 30, 2020).

Section 208 guarantees certain categories of people vulnerable to disenfranchisement the right to assistance with the voting process by a person of the voter's choice. Congress included only two groups of people who could not provide such assistance – the voter's employer or an agent or officer of the voter's union. On its face, this appears to reflect Congress's intent to insulate the voter from receiving assistance from those who have a pecuniary influence over the voter and who could potentially prevent the voter from working. Other than these two excluded groups, the plain language of Section 208 gives voters unfettered choice over who may assist them with the voting process. *See Arkansas United v. Thurston*, No. 5:20-CV-5193, 2020 WL 6472651, at *4

Case 5:21-cv-00361-BO   Document 29   Filed 05/04/22   Page 5 of 11

(W.D. Ark. Nov. 3, 2020) ("[T]here is nothing in the statutory language to suggest that a state may burden, unduly or otherwise, the right [to choice] articulated in § 208.").

## II. Ballot request provisions in §§ 163-230.1, 230.2, and 230.3

N.C. Gen. Stat. §§ 163-230.1, 230.2(e) and 230.3 limit who can help a voter request an absentee ballot. N.C. Gen. Stat. § 230.2(e) states that "[a] request for absentee ballots is not valid if . . . [t]he completed written request is completed, partially or in whole, or signed by anyone other than the voter, or the voter's near relative or verifiable legal guardian." The same limitation applies to requesting a ballot through an online portal. *Id.* § 163-230.3. Requesting an absentee ballot is part of "voting" and, therefore, is encompassed in Section 208. *See id.* § 10310(c)(1); *OCA-Greater Houston*, 867 F.3d at 614–15. The plain language of North Carolina's provisions narrow a Section 208 voter's choice of assistant from the federally authorized right to "a person of the voter's choice" to "the voter's near relative or verifiable legal guardian."

N.C. Gen. Stat. § 163-230.2(e1) states that if a voter "is in need of assistance completing the written request form due to blindness, disability, or inability to read or write and there is not a near relative or legal guardian available to assist that voter, the voter may request some other person to give assistance, notwithstanding any other provision of this section." Defendant argues this provision serves to remove any conflict between Section 208 and the aforementioned provisions. However, § 163-230.2(e1) requires voters to first seek a relative or legal guardian before being allowed to choose an assistant of their choice. Coupled with the language in §§ 163-230.1, 230.2(e) and 230.3, the Court finds that the narrowing of the category of potential assistants potentially conflicts with Section 208.

Defendants argue that Section 208 guarantees the assistance of *a* person of the voter's choice, not *the* person of the voter's choice. However, Congress only included two categories of

6

excluded assistants in the statutory text, and if Congress intended to exclude more categories, or to allow states to exclude more categories, it could have said so. The use of the indefinite article "a" does not show intent by Congress to allow states to restrict a federally created right, for Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Assns.*, Inc., 531 U.S. 457, 468 (2001); *see Arkansas United*, 2020 WL 6472651, at *4.

Federal courts have shown little tolerance for any narrowing of the Section 208 right to assistance with the voting process. The Fifth Circuit affirmed a Texas district court's determination that a Texas state law impermissibly narrowed assistance to voters guaranteed by Section 208, stating "the problem remains that the Texas provisions expressly limit the right to the act of casting a ballot. It should go without saying that a state cannot restrict this federally guaranteed right by enacting a statute tracking its language, then defining terms more restrictively than as federally defined." *OCA-Greater Houston*, 867 F.3d at 615.

Thus, the plain language of the absentee ballot request provisions appears to conflict with Section 208 and place a burden on the right to vote. The Court finds that, with respect to North Carolina's ballot request provisions, plaintiff has stated a plausible claim.

### III. Ballot completion provisions in § 163-226.3

N.C. Gen. Stat. §§ 163-226.3(a)(4) and (a)(6) prohibits "any owner, manager, director, employee, or other person, other than the voter's near relative or verifiable legal guardian, to (i) make a written request pursuant to G.S. 163-230.1 [for an absentee ballot] or (ii) sign an application or certificate as a witness, on behalf of a registered voter, who is a patient in any hospital, clinic, nursing home or rest home in this State or for any owner, manager, director, employee, or other person other than the voter's near relative or verifiable legal guardian, to mark the voter's absentee ballot or assist such a voter in marking an absentee ballot." These North

Carolina provisions also conflict with the plain language of Section 208 by narrowing who voters may use for assistance with marking their absentee ballots and by limiting the assistance voters in congregate settings are permitted to request.

The Middle District of North Carolina found that § 163-226.3(a)(4) impermissibly restricted the rights guaranteed by Section 208 in a case where an individual resident of a nursing home wished for voting assistance but, because of COVID-19 nursing home restrictions, did not have access to a near relative or a verified legal guardian. *Democracy N. Carolina*, 476 F.Supp.3d at 235 (enjoining the enforcement of N.C. Gen. Stat. § 163-226.3(a)(4) against a single patient in a nursing home). Defendant explicitly admits that "it is undisputed that North Carolina law specifically prohibits medical facility personnel from assisting patients within the same medical facility," [DE 18 pp. 18], with the voting process.

These North Carolina provisions prohibit those affiliated with a congregate care facility from helping a voter living in that facility with the voting process in any way. Thus, the Court finds that these provisions appear to conflict with the plain language of Section 208 and place a burden on the right to vote. With respect to North Carolina's ballot completion provisions, plaintiff has stated a plausible claim.

### IV. Ballot delivery provisions in § 163-231

N.C. Gen. Stat. § 163-231(b)(1) states that absentee ballots "shall be transmitted by mail or by commercial courier service, at the voter's expense, or delivered in person, or by the voter's near relative or verifiable legal guardian." Again, the plain language of this provision appears to impermissibly narrow the right to assistance by a person of the voter's choice by prohibiting the mailing or delivery of a voter's ballot by anyone except a near relative or legal guardian. The Court finds that the North Carolina provision appears to conflict with the language of the federal statute

8

and place a burden on access to voting. The Court finds that, with respect to North Carolina's ballot delivery provisions, plaintiff has plausibly stated a claim.

## V. Purpose and legislative history of Section 208 of the Voting Rights Act

Defendants argue that even if the North Carolina laws conflict with Section 208 of the Voting Rights Act, the conflicts are minimal and permissible because they align with the purpose and intent of Section 208. The Voting Rights Act was enacted by Congress in 1965 to forbid states from imposing practices that abridged the right of any U.S. citizen to vote on account of race or color. *Shelby Cty., Ala. v. Holder*, 570 U.S. 529, 537 (2013). The purpose was to create a guaranteed right to the voting process that could not be narrowed or limited by state legislation.

In 1982, Congress reauthorized the Voting Rights Act for an additional 25 years and found that additional groups of Americans were being disenfranchised or discriminated against at the polls. The Senate Committee found that "[c]ertain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance in voting including aid within the voting booth. These groups include the blind, the disabled, and those who either do not have a written language or who are unable to read," S. Rep. 97-417, 62, 1982 U.S.C.C.A.N. 177, 240. Congress added Section 208 specifically to address the concern that people in these groups required assistance to vote but, prior to Section 208, were in the "adverse circumstance[] of not being able to choose their own assistance" *Id.*; *See generally OCA-Greater Houston v. Texas*, No. 1:15-CV-00679-RP, 2016 WL 9651777, at *9 (W.D. Tex. Aug. 12, 2016) ("In adding Section 208, Congress recognized that voting is a *process*."), *aff'd*, 867 F.3d 604 (5th Cir. 2017).

The Senate Committee emphasized the importance of choice when giving Section 208 voters the right to assistance:

> [T]he Committee has concluded that [voters] must be permitted to have the assistance of a person *of their own choice*. The Committee concluded that this is

9

the only way to assure meaningful voting assistance and to avoid possible
intimidation or manipulation of the voter. To do otherwise would deny these voters
the same opportunity to vote enjoyed by all citizens.

S. Rep. 97-417, 1982 U.S.C.C.A.N. 177, 240-41 (emphasis added). The legislative history shows

that Congress' intent in enacting Section 208 was to protect the choice of vulnerable citizens and

give them meaningful access to the vote. This does not support defendants' contention that states

may further limit voters' choice of assistant and burden their access to the voting process.

Defendants' argument that the narrowing of Section 208 voters' choice is justified by the state's

desire to provide additional protections not included in the federal statute for vulnerable voters

falls flat. As the Supreme Court stated in *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, to avoid

preemption "it is not enough to say that the ultimate goal of both federal and state law is the same[.]

A state law also is pre-empted if it interferes with the methods by which the federal statute was

designed to reach th[at] goal." 505 U.S. 88, 103 (1992) (quotations and citations omitted).

Defendants rightly points out that Congress clearly envisioned some limits on those who

could provide assistance to Section 208 voters. The legislative history specifically states that

Congress was concerned that the "members of these groups are more susceptible than the ordinary

voter to having their vote unduly influenced or manipulated," S. Rep. 97-417, 62, 1982

U.S.C.C.A.N. 177, 240. However, as stated above, Congress expressly excluded two categories of

people (employers and union agents) and then expressly left the remaining choice up to the voter.

Prohibiting nursing home and other congregate living residents from being able to ask staff or

other assistants for help with the voting process or to mail in a ballot does not protect residents

from undue influence, it limits their access to the ballot.

Defendant also correctly notes that the Senate Committee noted "the legitimate right of any

state to establish necessary election procedures, subject to the overriding principle that such

10

procedures shall be designed to protect the rights of voters." 1982 U.S.C.C.A.N. 177, 241. However, given the context of the legislative discussion around Section 208, it is unlikely that the Senate intended to permit state election procedures that directly restrict rights guaranteed by the text of Section 208.

At this stage of the case, the Court finds that plaintiff has stated a plausible claim for relief by showing that the cited North Carolina provisions appear to conflict with Section 208 of the Voting Rights Act. The Court is unpersuaded by defendants' arguments and DENIES the motion to dismiss.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss [DE 17] is DENIED.


SO ORDERED, this __4__ day of May, 2022.


TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

11