IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Case No. 5:21-cv-361-BO

| | |
|---|---|
| DISABILITY RIGHTS NORTH CAROLINA, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, in her official capacity as Executive Director of the NCSBOE, DAMON CIRCOSTA, in his official capacity as Chair of the NCSBOE, STELLA ANDERSON, in her official capacity as Secretary of the NCSBOE, JEFF CARMON III, in his official capacity as Member of the NCSBOE, STACY EGGERS IV, in his official capacity as Member of the NCSBOE, and TOMMY TUCKER, in his official capacity as Member of the NCSBOE, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. ) | |

Plaintiff Disability Rights North Carolina, by and through counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby submits this Memorandum in Support of Plaintiff's Motion for Summary Judgment, [D.E. 33].

**STATEMENT OF THE CASE**

Plaintiff Disability Rights North Carolina ("DRNC"), filed this action on September 9, 2021, alleging that several provisions of North Carolina law regarding absentee voting contravene Section 208 of the federal Voting Rights Act. [D.E. 1.] Defendants filed a Motion to Dismiss on November 1, 2021. [D.E. 17, 18.] Defendants' Motion to Dismiss was denied on May 4, 2022. [D.E. 29.] Defendants filed their Answer to the Complaint on May 20, 2022. [D.E.

1

31.] The parties, by mutual agreement, are engaged in an expedited briefing schedule related to dispositive motions.

## STATEMENT OF FACTS

Pursuant to Local Rule 56.1(c), in lieu of repetition, Plaintiff refers to its Statement of Undisputed Facts, filed contemporaneously herewith.

## ARGUMENT

Section 208 of the Voting Rights Act ("VRA") ensures that voters with disabilities can select an assistant of their choice. 52 U.S.C. § 10508 ("Section 208"). North Carolina impermissibly restricts the individuals who may provide voting assistance. *See* N.C. Gen. Stat. §§ 163-226.3(a)(4) and (a)(6), 163-230.1, 163-230.2(e), 163-230.3, and 163-231(b)(1). The challenged state statutes conflict with federal law and are preempted by the VRA. In the absence of an injunction, DRNC and its constituents will continue to be harmed by the challenged state statutes. Plaintiff respectfully seeks a declaration from the Court that the challenged provisions of state law restricting a disabled voter's choice of assistant is preempted by the VRA and is unenforceable, and further seeks an injunction prohibiting enforcement of these preempted provisions.

**I.   Section 208 of the VRA Confers Rights on Voters with Disabilities that Preempt Contrary State Law.**

State law impermissibly narrows federal law providing voters with disabilities their choice of assistant. Section 208 of the Voting Rights Act provides voters with disabilities the right to an assistant of their choice, other than their employer or union. 52 U.S.C. § 10508. As the Court noted in denying Defendants' Motion to Dismiss:

> Section 208 guarantees certain categories of people vulnerable to disenfranchisement the right to assistance with the voting process by a person of the voter's choice. Congress included only two groups of people who could not

2

Case 5:21-cv-00361-BO    Document 34    Filed 06/15/22    Page 2 of 11

> provide such assistance - the voter's employer or an agent or officer of the voter's union. On its face, this appears to reflect Congress's intent to insulate the voter from receiving assistance from those who have a pecuniary influence over the voter and who could potentially prevent the voter from working. **Other than these two excluded groups, the plain language of Section 208 gives voters unfettered choice over who may assist them with the voting process**. *See Arkansas United v. Thurston,* No. 5:20-CV-5193, 2020 WL 6472651, at *4 (W.D. Ark. Nov. 3, 2020) ("[T]here is nothing in the statutory language to suggest that a state may burden, unduly or otherwise, the right [to choice] articulated in § 208.").

[D.E. 29, pp. 5-6 (emphasis added).]

The scope of "voting" encompassed by Section 208 includes all relevant aspects of absentee voting, such as registration, any other prerequisites to voting, casting a ballot, and having such ballot counted properly. 52 U.S.C. § 10310. *See also*, *Democracy N.C. v. N.C. State Bd. Of Elections*, 476 F. Supp. 3d 158, 234-35 (M.D.N.C. 2020) (holding that provisions of North Carolina election law relating to various aspects of the absentee voting process are subject to Voting Rights Act). *Accord*, *La Unión Del. Pueblo Entero v. Abbott*, 2022 U.S. Dist. LEXIS 92710, at *56 (W.D. Tex. May 24, 2022) (holding that limitations on the type of assistance provided would violate voters' Section 208 right to assistance based on the VRA's broad definition of "voting.") The Court interpreted the term "voting" consistent with these cases in denying Defendants' Motion to Dismiss. [D.E. 29, p. 5.]

As detailed below, conflicts are present with regard to the challenged provisions of state law. Conflict preemption applies where compliance with both federal and state law is not possible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l. Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S. Ct. 2374, 2383 (1992) (internal quotation marks and citations omitted). Section 208 provides an unambiguous rule, the infringement of which is not permitted under the plain language of the statute. The challenged provisions of North Carolina law directly contravene

3

Section 208 and impermissibly restrict the right of a disabled voter to decide who provides them with assistance during all aspects of the absentee voting process. Conflict preemption requires that the challenged provisions of state law be held unenforceable.

    A.    **The Ballot Request Provisions Contravene Section 208.**

N.C. Gen. Stat. §§ 163-230.1[1], 163-230.2(e)[2] and 163-230.3[3] restrict who can help a voter to request an absentee ballot to a near relative or verifiable legal guardian. This narrowing of choices conflicts with Section 208. Requesting an absentee ballot is encompassed in the definition of "voting" and is therefore subject to the choice of assistant provisions contained in Section 208. 52 U.S.C. § 10310. *See also*, *Democracy N.C.,* 476 F. Supp. 3d at 234-35 (holding that provisions of North Carolina election law that relate to various aspects of the absentee voting process are subject to the VRA); *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614-15 (5th Cir. 2017) (holding that "voting" is broadly defined in the "unambiguous language" of VRA). The Court previously came to the same conclusion. [D.E. 29, p 6.]

The absentee ballot request provisions contained in N.C. Gen. Stat. §§ 163-230.1, 163-230.2(e) and 163-230.3 contradict Section 208 by constraining who can help a Section 208 voter

---

[1] "A qualified voter who is eligible to vote by absentee ballot under G.S. 163-226, or that voter's near relative or verifiable legal guardian, shall complete a request form for an absentee application and absentee ballots." N.C. Gen. Stat. § 163-230.1.

[2] "A request for absentee ballots is not valid if . . . [t]he completed written request is completed, partially or in whole, or signed by anyone other than the voter, or the voter's near relative or verifiable legal guardian." N.C. Gen. Stat. § 163-230.2(e). While a further provision permits other assistance if "there is not a near relative or legal guardian available to assist that voter," the exception requires the voter to first choose specified individuals. *See* N.C. Gen. Stat. § 163-230.2(e1).

[3] "...a qualified voter who is eligible to vote by absentee ballot . . . or that voter's near relative or verifiable legal guardian, may submit a request for absentee ballots online using the procedures set forth in this section in lieu of the completed written request on a form established by the State Board." N.C. Gen. Stat. § 163-230.3.

request an absentee ballot. *Democracy N.C.*, 476 F. Supp. 3d at 235. Specifically, Section 208 voters are required to rely on a guardian or close family member if one is available. In the context of Section 208 voters living in a hospital, clinic, nursing home or rest home (hereinafter "congregate setting"), the options are narrowed even further, as detailed below. Compliance with both federal and state law is impossible, and the absentee ballot request provisions stand as an obstacle to Congress' intent and purposes. Consequently, the absentee ballot request provisions are preempted by federal law. *Gade*, 505 U.S. at 98, 112 S. Ct. at 2383.

**B.     The Ballot Completion Provision Contravenes Section 208.**

N.C. Gen. Stat. § 163-226.3(a)(4) prohibits those affiliated with a congregate setting from helping a voter living in that facility in any way with the voting process, and N.C. Gen. Stat. § 163-226.3(a)(6) prohibits voters residing in a congregate setting from accepting assistance from this category of people. These prohibitions cover a range of activities that would constitute "voting" pursuant to the VRA, including casting a ballot and having that ballot counted. *See* 52 U.S.C. § 10310. Many individuals with disabilities living in congregate settings need assistance with voting because of their disabilities. (Pls.' Statement of Undisputed Facts, p. 1, ¶ 2.) These provisions operate to deny Section 208 voters residing in facilities their right to the assistant of their choosing. Compliance with both federal and state law is impossible, and the congregate setting-related provisions cited above stand as an obstacle to Congress' intent and purposes. Consequently, the congregate setting-related provisions are preempted by the VRA. *Gade*, 505 U.S. at 98, 112 S. Ct. at 2383.

**C.     The Ballot Delivery Provision Contravenes Section 208.**

Under North Carolina law, an absentee ballot must be:

transmitted by mail or by commercial courier service, at the voter's expense, or delivered in person, or by the voter's near relative or verifiable legal guardian.

N.C. Gen. Stat. § 163-231. Since mailing an absentee ballot is an "action required by law prerequisite to voting, casting a ballot, and having such ballot counted," it is encompassed by Section 208. *See* 52 U.S.C. §§ 10508, 10310; [D.E. 29, p. 8]. *See also*, *Democracy N.C.*, 476 F. Supp. 3d at 234 (applying definition of "voting" to absentee ballot delivery provision). Because the ballot delivery provision limits who can assist in returning an absentee ballot, it contravenes Section 208 by depriving voters with disabilities of the assistant of their choosing.

In summary, there is an irreconcilable conflict between Section 208 and all of the challenged statutes. Simultaneous compliance with these state and federal laws is not possible, and the challenged provisions of state law "stand[] as an obstacle to the accomplishment and execution of their full purposes and objectives of Congress" evidenced in Section 208. *Gade*, 505 U.S. at 98, 112 S. Ct. at 2383. As a result, the challenged statutes are preempted by Section 208.

## II. The Court Should Enjoin Enforcement of the Challenged State Law Provisions As They Relate to Voters with Disabilities.

The Court should enjoin enforcement of the challenged statutes because they are preempted by Section 208, and because they create ongoing harms for DRNC and its constituents. Injunctive relief is appropriate when a plaintiff shows: (1) irreparable injury, that (2) cannot be adequately compensated for with monetary damages; (3) the balance of hardships tilts in favor of plaintiff; and (4) equitable relief is in the public interest. *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017). All four prongs are met here, with regard to both DRNC and its constituents.

"Courts routinely deem restrictions on fundamental voting rights irreparable injury. . . . And once the election occurs, there can be no do-over and no redress. The injury to these voters is real and completely irreparable if nothing is done." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (citing *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012);

6

*Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986); *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997)). Section 208 guarantees voters with disabilities their choice of assistant and prohibits precisely what the challenged absentee ballot request and transmission provisions do: limiting a voter to receiving assistance from a near relative, a legal guardian, or a team designated by the local board of elections. *See* N.C. Gen. Stat. §§ 163-230.1, 163-231(b)(1) and 163-230.2. The same is also true for the prohibition on assistance from staff or others affiliated with the voter's residential facility, which the Middle District determined "impermissibly restricts" these voters. *See* N.C. Gen. Stat. §§ 163-226.3(4) and (6) (prohibiting facility-affiliated individuals from providing, and residents from receiving, assistance with any aspect of voting); *Democracy N.C.*, 476 F. Supp. 3d at 235.

DRNC brought this action as both an organizational and associational plaintiff. Where an organization experiences a "perceptible" diversion of resources and frustration of purpose, it may seek redress in its own right through *organizational* standing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 497 (4th Cir. 2021). DRNC meets those criteria here. *See* Decl. of Kenya Myers, ¶¶ 7-14 (describing resource diversion and frustration of mission related to the challenged statutes).

An organization has *associational* standing where:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333, 343 (1977). It is well-established that P&As like DRNC satisfy the *Hunt* test for associational standing. *See, e.g., Wilson v. Thomas*, 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014) (holding that DRNC represents the interests of North

7

Carolinians with disabilities and has standing to pursue claims on their behalf); *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1171 (M.D. Ala. 2016) (surveying courts that have "squarely held[] that Congress, by granting P&As the authority to pursue legal remedies to ensure the protection of those with disabilities, abrogated" the third prong of the *Hunt* test). DRNC meets the *Hunt* test for associational standing based on the record in this case. *See* Decl. of Virginia Knowlton-Marcus, ¶¶ 5-11 (detailing facts meeting the *Hunt* criteria).

Both DRNC and its constituents will be irreparably harmed by the continued violation of Section 208. For DRNC, the harm includes continued diversion of resources and frustration of mission, and an inability to address other voting rights needs of constituents. For DRNC's constituents, the irreparable harm is the continued deprivation of their rights under Section 208, particularly those living in congregate settings whose Section 208 rights are constrained with regard to every aspect of absentee voting. The harm to DRNC and its constituents cannot be remedied with monetary damages, as the harms relate to the impairment of the fundamental right to vote.

The balance of hardships likewise favor Plaintiff and its constituents. The proposed injunctive relief must pose more than mere fiscal and administrative problems to defendants to tip the balance away from plaintiffs who will suffer harm in the absence of relief. *Todd ex. rel Todd v. Sorrell*, 841 F.2d 87, 88 (4th Cir. 1988). Requiring a defendant to comply with the law is not a cognizable hardship. *See White v. Martin*, No. 02-4154-CV-C-NKL, 2002 U.S. Dist. LEXIS 27281, 22-23 (W.D. Mo. 2002); *citing Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986) (finding that an injunction requiring defendants to comply with existing law imposes no burden but "merely seeks to prevent the defendants from shirking their responsibilities"). Absent an order enjoining the challenged statutes to the extent that they conflict with Section 208, the

challenged statutes will continue to impair the federal rights of thousands of voters with disabilities living in facilities, and Plaintiff would be obliged to continue to invest limited resources in mitigating the harms associated with the challenged statutes. By contrast, Defendants would suffer no appreciable hardship, and would in fact experience reduced demand for MATs and other efforts associated with the constraints posed by the challenged statutes.

"[T]he public has a strong interest in exercising the 'fundamental political right' to vote," *Husted*, 697 F.3d at 436-37 (internal quotations omitted), and "[t]he public interest ... favors permitting as many qualified voters to vote as possible," *League of Women Voters of N.C. v. North Carolina*, 769 F.3d at 247. Equitable relief is in the public interest because of the high value associated with voting rights. The public interest is also served by federal preemption of state laws infringing on federally-guaranteed voting rights. The public interest would be harmed if the Court failed to ensure a mechanism for enforcement of federal rights.

## CONCLUSION

Section 208 of the Voting Rights Act is clear and unambiguous in granting voters with disabilities the right to choose who will assist them in voting. The challenged provisions of state law are therefore subject to preemption.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be granted, and the Court should enjoin the enforcement of the challenged statutes with regard to voters with disabilities who need assistance with voting.

This 15th day of June, 2022.

    Respectfully submitted,

    /s/ Lisa Grafstein
    Lisa Grafstein

lisa.grafstein@disabilityrightsnc.org
N.C. State Bar No. 22076

Holly Stiles
holly.stiles@disabilityrightsnc.org
N.C. State Bar No. 38930

DISABILITY RIGHTS NC
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: (919) 856-2195
Fax:     (919) 856-2244

ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Case No. 5:21-cv-361-BO

| | |
|---|---|
| DISABILITY RIGHTS NORTH CAROLINA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NORTH CAROLINA STATE BOARD OF ) <br> ELECTIONS, KAREN BRINSON BELL, in ) <br> her official capacity as Executive Director of ) <br> the NCSBOE, DAMON CIRCOSTA, in his ) <br> official capacity as Chair of the NCSBOE, ) <br> STELLA ANDERSON, in her official ) <br> capacity as Secretary of the NCSBOE, JEFF ) <br> CARMON III, in his official capacity as ) <br> Member of the NCSBOE, STACY EGGERS ) <br> IV, in his official capacity as Member of the ) <br> NCSBOE, and TOMMY TUCKER, in his ) <br> official capacity as Member of the NCSBOE, ) <br> ) <br> Defendants. ) | **WORD COUNT CERTIFICATION** <br> **L.R. 7.2(f)(3)** |

Pursuant to Local Rule 7.2(f)(3), the undersigned certifies that the word count for Plaintiffs' Memorandum in Support of Plaintiff's Motion for Summary Judgment is 2,704 words. In making this certification, the undersigned has relied upon Microsoft Word and its word count feature.

This the 15th day of June, 2022.  /s/ Lisa Grafstein
Lisa Grafstein