IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Case No. 5:21-cv-361-BO

| | |
|---|---|
| DISABILITY RIGHTS NORTH CAROLINA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) REPLY IN SUPPORT |
| | ) OF PLAINTIFF'S MOTION FOR |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, | ) SUMMARY JUDGMENT |
| | ) |
| Defendants. | ) |

Defendants' Opposition to Plaintiff's Motion for Summary Judgment largely advances the same arguments Defendants made in support of their Motion to Dismiss. In denying Defendant's Motion, the Court analyzed the challenged statutes and determined that they appear to conflict with Section 208 of the Voting Rights Act. Discovery has not produced any new information undermining the Court's initial conclusion. Defendants do not substantively dispute the few facts necessary for determination of this matter and have submitted no evidence in support of their Opposition. This case is ripe for resolution.

**I.     Plaintiff Has Standing to Assert the Claim in this Case on Behalf of All Voters with Disabilities Who Need Assistance with Absentee Voting.**

Defendants concede Plaintiff's associational and organizational standing as to voters living in congregate settings but attack Plaintiff's standing regarding voters with disabilities who do not live in congregate settings. [D.E. 35, pp. 9-12.] While it emphasized the harm to voters living in facilities, Plaintiff Disability Rights North Carolina ("DRNC") has associational standing regarding all provisions of the challenged statutes which limit the Section 208 rights of voters with disabilities, regardless of where they live.

1

An organization has associational standing where:

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333, 343 (1977). An organization need only demonstrate that **one** member or constituent would have standing. *Doe v. Stincer*, 175 F.3d 879, 885 (11th Cir. 1999) ("[I]t is enough for the representative entity to allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right.") *See, also, Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1170 (M.D. Ala. 2016) ("Indeed, there need not be any plaintiff other than the P&A; this is the very crux of associational standing.").

DRNC meets the requirements for associational standing. Virginia Knowlton Marcus, CEO of DRNC, testified that all voters with disabilities in North Carolina are constituents of DRNC, that this action is brought on behalf of those who need assistance with voting, and that ensuring access to voting by people with disabilities is germane to DRNC's purpose. [Marcus Decl. ¶¶ 9-11; Statement of Material Facts, D.E. 33-1, p. 2 ¶¶ 10 & 11.] Defendants did not dispute these facts in their Opposing Statement of Material Facts in Dispute, [*See* D.E. 36, p. 2 ¶ 10, p. 3 ¶ 11], except "to the extent that Plaintiff's use of the term 'constituents' is neither explained nor defined and it is not clear whether it is intended to confer some legal significance,"[1] [D.E. 36, pp. 2-3, ¶¶ 10 &11.]

Defendants acknowledge that some of DRNC's constituents would individually have standing. [*See* D.E. 35, p. 10 (acknowledging that the Myers "declaration does provide specific

---

[1] Plaintiff has used the term "constituent" throughout this matter to refer to individuals with disabilities whose interests are represented by DRNC. [D.E. 1, p. 6 ¶¶ 31-34.] The term is used in *Hunt* (which Defendants have cited) for the same purpose. *Hunt*, 432 U.S. at 342, 345, 346, and 348. Defendants have not sought clarification of the term prior to their Opposition.

2

examples of injuries to disabled persons").] Moreover, all Section 208 voters with disabilities are harmed by the statutes at issue based on the infringement of their federal rights. *See Wilson v. Thomas*, 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014) ("When the plaintiffs themselves are the object of the challenged government action, there is ordinarily little question that the action has caused them injury and that a judgment preventing the action will redress it." (cleaned up)).

Defendants' premise is that the injuries identified were as to those in facilities. However, all of the challenged statutes apply to Section 208 voters with disabilities living in facilities. For example, even absent the facility-specific restrictions in 163-226.3(a)(4) and (6), other restrictions on requesting, completing, and returning a ballot limit the rights of Section 208 voters living in facilities, just as they would limit those who are not. N.C. Gen. Stat. §§ 163-230.1, -230.2, -230.3, -226.3(a)(1), and -231(b)(1). The sole distinction is that those living in facilities face *additional* restrictions on who can provide them with assistance. N.C. Gen. Stat. § 163-226.3(a)(4) and (6). Even accepting Defendants' premise, the individuals that Defendants admit have been injured (and therefore would have standing) have standing as to all of the challenged statutes. Defendants' proposed distinction among DRNC's constituents based on where they live has no legal basis and invites the Court to fashion relief that would involve individualized determinations by the Defendants as to who is harmed by the challenged statutes.

Since DRNC meets the *Hunt* requirements, and at least one constituent would have standing regarding the challenged statutes, DRNC has associational standing to obtain systemic relief.

Having established associational standing, Plaintiff need not separately establish organizational standing. *See Wilson*, 43 F. Supp. 3d at 632 (noting that plaintiff had established associational standing, obviating the need to evaluate organizational standing). Nevertheless,

Defendants concede that Plaintiff has demonstrated organizational standing as to some voters. [D.E. 35, p. 11.] Defendant does not concede Plaintiff's organizational standing as to those living outside facilities but, as explained above, that distinction has no legal significance.

Plaintiff has established the requisites for standing with regard to its claim in this case.

**II.     The Challenged Statutes Plainly Conflict with Express Congressional Language.**

The parties agree that the relevant analysis is this case is whether the challenged statutes are subject to conflict preemption. [D.E. 34, pp. 3-4; D.E. 35, pp. 12-13.] Plaintiff detailed the conflicts between each of the challenged statutes and Section 208 in its opening brief. [D.E. 34, pp. 4-6.] In their Opposition, Defendants largely restate the arguments made in support of their Motion to Dismiss and fail to advance new arguments. [D.E. 35, pp. 13-21.]

Defendants contend that the Senate Report regarding Section 208 permits states to narrow the scope of the rights granted in Section 208, relying on the premise that the challenged statutes are "justified by state interests reflecting the purpose and objective as Section 208." [D.E. 35, pp. 13-15; 21-25.] However, Defendants have failed to come forward with any supporting *evidence* of the state's interest, purpose, or objective in adopting that challenged statutes. *See* Fed. R. Civ. P. 56(c) (providing that courts may, *inter alia*, grant summary judgment where a party fails to support or address a factual assertion). Defendants also propose a narrow reading of Section 208 that does not permit *the* assistant of the voter's choosing, but only *a* person of the voter's choice. [D.E. 35, p. 14.] The Court has previously rejected these arguments, as have other courts, including the Middle District of North Carolina, as detailed in Section II.B., below.

Defendants have offered the Court no basis upon which to change its analysis of the challenged statutes and have offered no facts to be tried. Summary judgment for Plaintiff is appropriate.

### A. Each Challenged Provision Impermissibly Restricts the Section 208 Rights of Voters with Disabilities[2]

#### i. Requesting an Absentee Ballot

Defendants' contention that the absentee ballot request provisions do not violate Section 208 is premised on a limited exception in N.C. Gen. Stat. § 163-230.2(e1). Defendants admit – as they must because it is in the statute – the exception "does require that the voter first attempt to use their near relative or legal guardian before allowing another person to assist the voter, and does not permit medical facility staff to assist." [D.E. 35, p. 17.] As the Court – and other courts – have determined, such limitations directly violate Section 208 by limiting the voter's choice in ways that are not sanctioned by Section 208. [D.E. 29, p. 6]; *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 234-35 (M.D.N.C. 2020); *OCA-Greater Houston v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017); *La Unión Del. Pueblo Entero v. Abbott*, 2022 U.S. Dist. LEXIS 92710, at *56 (W.D. Tex. May 24, 2022).

#### ii. Marking an Absentee Ballot

All of the acts barred by N.C. Gen. Stat. § 163-226.3(a) relate to the involvement of third parties in absentee voting, and all make it a Class I felony to assist or receive assistance except for specified exceptions. Plaintiff agrees with Defendants that the cross-referenced subsections of this provision must be considered as a whole. [D.E. 35, p. 18-20.]

N.C. Gen. Stat. § 163-226.3(a)(4) prohibits owners or staff of a congregate care facility from providing any assistance with voting, including by marking the ballot or proving any other form of assistance, to an individual residing in that facility. This provision is an additional

---

[2] Defendants appear to argue that the rights of blind voters are not implicated because Defendants provide alternate formats of printed ballots and election materials. [*See* D.E. 35, p. 6-7.] However, the potential that some voters may no longer need assistance is irrelevant to the issues in this case.

limitation on assistance with regard to requesting the ballot, addressed in section II.A.i. above, or returning the ballot, which is addressed in section II.A.iii. below. While the provisions of subsection (a)(4) apply to actions by facility staff, subsection (a)(6) additionally prohibits *a voter* from *allowing* any person to mark their absentee ballot, or to be present or watch the voter mark their absentee ballot. Subsection (a)(6) incorporates the prohibitions (and their exceptions) in the preceding subsections and makes it a Class I felony for the voter to accept the assistance prohibited by subsections (a)(1) through (a)(4).

Defendants acknowledge the limitations imposed by N.C. Gen. Stat. § 163-226.3(a), but contend that they are "the considered policy of the State," [D.E. 35, p. 18], "the obvious purpose of such a restriction would be to protect the secrecy of the voter's ballot," [D.E. 35, p. 19], and they are to protect such voters from "individuals North Carolina policy makers have determined could exert undue influence over them," [D.E. 35, p. 20]. Defendants provide no citations or support for these policy arguments grounded in assumptions about state legislative intent.

By contrast, Section 208's facial purpose is to give voters with disabilities the affirmative right to choose who will help them vote, with two designated exceptions for employers and union agents. 52 U.S.C. § 10508. The Senate Report explains why:

> The manner of providing assistance has a significant effect on the free exercise of the right to vote . . . . Specifically, it is only natural that many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, **someone other than a person of their choice**.
> . . . .
> To limit the risks of discrimination . . . the Committee has concluded that they **must be permitted to have the assistance of a person of their own choice**. The Committee concluded that **this is the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter**.

Senate Committee, S. Rep. 97-417, 1982 U.S.C.C.A.N. 177, 240-41 (emphases added).

Defendants' policy arguments do not resolve the irreconcilable conflict with Section 208.

6

The provisions of N.C. Gen. Stat. § 163-226.3(a), as applied to the ability of voters with disabilities, interferes with the methods by which Section 208 seeks to empower voters with disabilities, and criminalizes the exercise of Section 208 rights.

### iii. Returning an Absentee Ballot

Defendants acknowledge that restrictions contained in N.C. Gen. Stat. § 163-226.3(a) limit the ability of facility residents to receive assistance from facility staff in returning absentee ballots. [D.E. 35, pp. 20-21.] N.C. Gen. Stat. § 163-231(b)(1) also limits who can provide assistance with ballot return, notwithstanding the provisions of 08 N.C.A.C. 18. 0101, which provides tightly constrained and limited authorization for voters with disabilities to receive assistance with placing the ballot in the mail. These limitations violate Section 208 by impermissibly constraining the voter's choice of assistant in returning their absentee ballot.

### B. The Senate Report on Section 208 Supports Rather than Obviates the Clear Meaning of Section 208.

Nothing in Section 208 allows states to limit the rights created in Section 208; doing so is inconsistent with the very idea of conflict preemption. The Middle District of North Carolina determined that the challenged provisions "impermissibly narrow Section 208's dictate." *Democracy N.C.*, 476 F. Supp. 3d at 235. The Court agreed, rejecting Defendants' reliance on cases discussed in their Opposition. [D.E. 29, pp. 6-8.]

The Senate Committee emphasized the importance of giving Section 208 voters the right to assistance of their choice, noting that "[t]o do otherwise would deny these voters the same opportunity to vote enjoyed by all citizens." S. Rep. 97-417, 1982 U.S.C.C.A.N. 177, 241. As the Court previously concluded:

> The legislative history shows that Congress' intent in enacting Section 208 was to protect the choice of vulnerable citizens and give them meaningful access to the vote. This does not support defendants' contention that states may further limit

7

> voters' choice of assistant and burden their access to the voting process. Defendants' argument that the narrowing of Section 208 voters' choice is justified by the state's desire to provide additional protections not included in the federal statute for vulnerable voters falls flat. As the Supreme Court stated in *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, to avoid preemption 'it is not enough to say that the ultimate goal of both federal and state law is the same[.] A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal.' 505 U.S. 88, 103, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992) (quotations and citations omitted).
> . . . .
> Congress expressly excluded two categories of people (employers and union agents) and then expressly left the remaining choice up to the voter. Prohibiting nursing home and other congregate living residents from being able to ask staff or other assistants for help with the voting process or to mail in a ballot does not protect residents from undue influence, it limits their access to the ballot.
>
> . . . . [G]iven the context of the legislative discussion around Section 208, it is unlikely that the Senate intended to permit state election procedures that directly restrict rights guaranteed by the text of Section 208.

[D.E. 29, pp. 10-11.]

Defendants have offered no evidence or new authority to change the outcome or to otherwise undermine the Court's prior ruling. Defendants' addition of recommendations from a 2005 Commission on Federal Elections Reform does not directly relate to the restrictions at issue and does not appear related to Section 208 at all. [D.E. 35, pp. 23.] Defendants' policy arguments fail to overcome the direct contradiction between Section 208 and the challenged statutes.

### III. Plaintiff Has Demonstrated Entitlement to Declaratory and Injunctive Relief for Voters with Disabilities.

Plaintiff agrees with Defendants that the relief sought in this case is specific to voters with disabilities and does not encompass Section 208 voters whose need for assistance is not disability-related. [D.E. 35, p. 26.] For the reasons explained *supra*, pp. 1-3, however, Plaintiff is entitled to declaratory and injunctive relief based on the full scope of its standing and is not limited to relief on behalf of voters living in specific settings. As explained above, Plaintiff need

8

not show that all voters with disabilities need injunctive relief; associational standing requires only that one individual member or constituent would have standing if they brought their own action. *See Doe*, 175 F.3d at 885 (11th Cir. 1999). There is no factual dispute on this point, as Defendants admit that there are such individuals. [*See* D.E. 35, p. 10 (acknowledging that the Myers "declaration does provide specific examples of injuries to disabled persons").]

Plaintiff brought one claim in this case, alleging the challenged statutes violate 52 U.S.C. § 10508 and 42 U.S.C. § 1983 and the Supremacy Clause. [D.E. 1, pp. 8-9, ¶¶ 39-44.] The claim was brought on behalf of all voters with disabilities who need assistance with voting. [*Id*.] There is no reason for the Court to parse the remedy in this case in the way that Defendants propose.

**Conclusion**

There is no need for a trial in this case because there are no material disputed facts. As the Court previously concluded, the challenged statutes conflict with Section 208. Defendants have advanced policy arguments that do not change the simple facial conflicts at issue.

Plaintiff respectfully requests that the Court enjoin the enforcement of the challenged statutes with regard to voters with disabilities who need assistance with voting.

This 30th day of June, 2022.

Respectfully submitted,

/s/ Lisa Grafstein
Lisa Grafstein
lisa.grafstein@disabilityrightsnc.org
N.C. State Bar No. 22076

Holly Stiles
holly.stiles@disabilityrightsnc.org
N.C. State Bar No. 38930

DISABILITY RIGHTS NC 3724
National Drive, Suite 100

Raleigh, NC 27612  
Phone: (919) 856-2195  
Fax: (919) 856-2244

ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Case No. 5:21-cv-361-BO

| | |
|---|---|
| DISABILITY RIGHTS NORTH CAROLINA, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, in her official capacity as Executive Director of the NCSBOE, DAMON CIRCOSTA, in his official capacity as Chair of the NCSBOE, STELLA ANDERSON, in her official capacity as Secretary of the NCSBOE, JEFF CARMON III, in his official capacity as Member of the NCSBOE, STACY EGGERS IV, in his official capacity as Member of the NCSBOE, and TOMMY TUCKER, in his official capacity as Member of the NCSBOE, | ) <br> ) **WORD COUNT CERTIFICATION** <br> ) **L.R. 7.2(f)(3)** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

Pursuant to Local Rule 7.2(f)(3), the undersigned certifies that the word count for Reply in Support of Plaintiff's Motion for Summary Judgment is 2777 words. In making this certification, the undersigned has relied upon Microsoft Word and its word count feature.

This the 30th day of June, 2022.         /s/ Lisa Grafstein
                                          Lisa Grafstein