IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-361-BO

DISABILITY RIGHTS NORTH )
CAROLINA, )
         Plaintiff, )
)
v. ) O R D E R
)
NORTH CAROLINA STATE BOARD )
OF ELECTIONS, KAREN BRINSON )
BELL, in her official capacity as Executive )
Director of the NCSBOE, DAMON )
CIRCOSTA, in his official capacity as )
Chair of the NCSBOE, STELLA )
ANDERSON, in her official capacity as )
Secretary of the NCSBOE, JEFF )
CARMON III, in his official capacity as )
Member of the NCSBOE, STACY )
EGGERS IV, in his official capacity as )
Member of the NCSBOE, and TOMMY )
TUCKER, in his official capacity as )
Member of the NCSBOE, )
         Defendants. )

    This cause comes before the Court on plaintiff's motion for summary judgement [DE 33] and the parties' joint motion to expedite consideration [DE 38] of the motion for summary judgement. For the reasons that follow, both motions are granted.

## BACKGROUND

    Plaintiff Disability Rights North Carolina ("DRNC") is an independent non-profit organization that focuses on protecting the voting rights of North Carolinians with disabilities. DRNC is designated as a North Carolina Protection and Advocacy system, which authorizes it to pursue legal, administrative, and other appropriate remedies to ensure the protection of the rights of individuals with disabilities. *See* 42 U.S.C. §§ 300d-53, 405, 10801 *et seq.*, 1320b-21, 15041-

15045; 29 U.S.C. §§ 794e, 3004; 52 U.S.C. §§ 21061-21062. All North Carolina voters with disabilities are constituents of DRNC.

To vote using an absentee ballot in North Carolina, a voter must obtain an absentee ballot request form, complete and return the request form, receive an absentee ballot form in the mail, and complete and mail the absentee ballot. Section 208 of the federal Voting Rights Act states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

Plaintiff DRNC brought this suit to challenge several North Carolina laws that plaintiff claims limit the voting rights of disabled North Carolinians. Specifically, North Carolina laws prohibit voters with disabilities living in facilities like clinics, hospitals, and nursing homes from relying on persons associated with those facilities for assistance with any of the steps required to vote absentee. Thousands of individuals with disabilities in North Carolina are residing in hospitals, clinics, and nursing homes (congregate settings) and need assistance with voting because of their disabilities. Often times, facility staff are the only people available to help these individuals with their absentee ballots and plaintiff argues that they should be allowed to provide a trusted source of assistance. Additionally, plaintiff represents the interests of disabled persons residing outside of congregate care facilities whose voting rights are also curtailed by the North Carolina voting provisions. Plaintiff brought this suit to enforce the federal right of voters with disability to rely on the assistant of their choosing when they vote.

Plaintiff filed its complaint on September 9, 2021, challenging North Carolina's absentee ballot request provisions in N.C. Gen. Stat. §§ 163-230.1, 230.2(e) and 230.3; absentee ballot completion provisions in §§ 163-226.3(a)(4) and (a)(6); and absentee ballot delivery provision in

2

§ 163-231(b)(1). Plaintiff alleges that these provisions conflict with Section 208 of the Voting Rights Act and the Supremacy Clause. Plaintiff named the North Carolina State Board of Elections and six election officials in their official capacity, pursuant to 42 U.S.C. § 1983, as defendants in this case. The North Carolina State Board of Elections ("NCSBOE") is the state agency responsible for managing and supervising elections in North Carolina.

Defendants filed a motion to dismiss on November 1, 2021. The parties filed a joint motion to expedite consideration of the motion to dismiss and to modify the discovery plan on April 26, 2022. The motion to expedite and to modify the discovery schedule was granted on April 29, 2022. On May 4, 2022, the Court denied defendants' motion to dismiss and found that plaintiff had plausibly stated a claim that the North Carolina provisions conflicted with federal law. On June 15, 2022, plaintiff filed a motion for summary judgement, seeking declaratory and injunctive relief. The parties filed a joint motion to expedite consideration of plaintiff's motion for summary judgement on July 1 and requested that the motion for summary judgement be ruled upon before the end of July so that the state could meet printing deadlines in preparation to disseminate 2022 absentee ballots.

## DISCUSSION

Plaintiff has filed a motion for summary judgement, asking the Court for a declaration that defendants have violated and continue to violate Section 208 of the Voting Rights Act by infringing on the rights of voters with disabilities to receive assistance from the person of their choice and a permanent injunction prohibiting defendants from enforcing those provisions as they relate to voters with disabilities. Defendants responded and argued that plaintiff does not have standing to seek relief for individuals residing outside of congregate settings, and that the

3

challenged provisions are not preempted by federal law because the provisions help further the purpose of Section 208 of the Voting Rights Act.

As an initial matter, the parties' motion to expedite consideration of the pending motion is granted for good cause shown.

## I. Standing

Standing is the determination of whether a plaintiff is the proper party to assert a claim in federal court; it "is founded in concern about the proper–and properly limited role–of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). An organization who is not an individual may demonstrate two types of standing: *associational* standing, where the organization represents the interests of constituents who would otherwise have standing; and *organizational* standing, where the organization itself has interests relating to the alleged wrong. *Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333, 343–47 (1977). Defendants concede that plaintiff has associational and organizational standing as to voters living in congregate settings, but disputes plaintiff's ability to bring claims on behalf of disabled North Carolina voters who live outside of congregate homes.

Associational standing may be asserted by an organization where:

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343. A non-membership organization has associational standing where it possesses the "indicia of membership." *Id.* at 344. This Court and others[1] have previously decided that DRNC

---

[1] *Wilson v. Thomas*, 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014) (holding that DRNC represents the interests of North Carolinians with disabilities and has standing to pursue claims on their behalf); *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1171 (M.D. Ala. 2016) (surveying courts that have "squarely held[] that Congress, by granting P&As the authority to pursue legal remedies to ensure the protection of those with disabilities, abrogated" the third prong of the *Hunt* test).

4

and organizations like DRNC have associational standing to pursue claims on behalf of individuals with disabilities. All voters with disabilities in North Carolina are constituents of DRNC, and this action is brought on behalf of those who need assistance with voting. DE 33-3, pp. 33-34, 37-39. Therefore, DRNC possesses the indicia of membership with individuals in and outside of congregate settings who would be able to sue on their own behalf, which satisfies the first prong of *Hunt*. Second, ensuring access to voting by people with disabilities is germane to DRNC's purpose. DE 33-2, pg. 34. Third, plaintiff's claim does not require the participation of any one member. Accordingly, plaintiff has satisfied the *Hunt* test and has associational standing on behalf of all of its members, inside and outside of congregate homes.

Where an organization experiences a "perceptible" diversion of resources and frustration of purpose, it may seek redress in its own right through organizational standing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 497 (4th Cir. 2021). Plaintiff DRNC has demonstrated that it has diverted significant resources to providing support for constituents impacted by the challenged North Carolina provisions, and that the provisions frustrate DRNC's purpose of ensuring all disabled North Carolina voters receive their federally guaranteed rights. DE 33-3, pp. 34-35, 37-39. Accordingly, plaintiff has demonstrated organizational standing in that plaintiff as an organization is harmed by the challenged provisions.

Plaintiff has demonstrated both associational and organizational standing to challenge the North Carolina voting provisions.

## II. Motion for Summary Judgement

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

*Genuine Issue of Material Fact*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, courts view the evidence and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotations and alterations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). The non-moving party may not rest on mere allegations or denials and cannot present only a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986). Evidence that is "merely colorable" or "not significantly probative" will not suffice to defeat a motion for summary judgement. *Id.* at 249. If the opposing party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then disposition by summary judgement is appropriate. *Id.* at 250; *see also Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

6

Plaintiff has demonstrated that there are no issues of triable facts remaining in the case. DE 33-1. Defendants filed an "Opposing Statement of Material Facts in Dispute," [DE 36], but raised no material disputes other than different legal interpretation of existing statutes. In sum, the Court finds no genuine issues of material fact.

*Judgement as a Matter of Law*

Conflict preemption applies where compliance with both federal and state law is not possible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l. Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal quotation marks and citations omitted). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

A. The Voting Rights Act

The Voting Rights Act was enacted by Congress in 1965 to forbid states from imposing practices that abridged the right of any U.S. citizen to vote on account of race or color. *Shelby Cty., Ala. v. Holder*, 570 U.S. 529, 537 (2013). The purpose was to create a guaranteed right to the voting process that could not be narrowed or limited by state legislation. Section 208 of the Voting Rights Act gives voters who require assistance to vote because of blindness, disability, or inability to read or write, the right to "assistance by a person of the voter's choice," so long as the assistant is not the "the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C.A. § 10508. The express exclusion of only two groups is significant, because it implies that all other categories of assisters are permitted. If Congress intended to exclude more categories,

7

or to allow states to exclude more categories, it could have said so.[2] Accordingly, other than these two excluded groups, the plain language of Section 208 gives voters unrestricted choice over who may assist them with the voting process.[3] *See Arkansas United v. Thurston*, No. 5:20-CV-5193, 2020 WL 6472651, at *4 (W.D. Ark. Nov. 3, 2020) ("there is nothing in the statutory language to suggest that a state may burden, unduly or otherwise, the right [to choice] articulated in § 208.").

"Vote" or "voting" is defined by the statute itself as including "all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly." *Id.* § 10310(c)(1). "To vote, therefore, plainly contemplates more than the mechanical act of filling out the ballot sheet. It includes steps in the voting process before entering the ballot box, 'registration,' and it includes steps in the voting process after leaving the ballot box, 'having such ballot counted properly.'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614–15 (5th Cir. 2017) (quoting the Voting Rights Act). "'Voting' includes the delivery of an absentee ballot to a county board of elections as an action 'necessary to make a vote effective'" *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, 476 F.Supp.3d 158, 234–35 (M.D.N.C. 2020) (quoting 52 U.S.C.A. § 10310(c)(1)), *reconsideration denied*, No. 1:20CV457, 2020 WL 6591396 (M.D.N.C. Sept. 30, 2020). Accordingly, the plain language of Section 208 provides a right to assistance with the voting process by a person of the voter's choice, other than the voter's employer or union agent.

---

[2] The use of the indefinite article "a" does not show intent by Congress to allow states to restrict a federally created right, for Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Assns.*, Inc., 531 U.S. 457, 468 (2001); *see Arkansas United v. Thurston*, No. 5:20-CV-5193, 2020 WL 6472651, at *4 (W.D. Ark. Nov. 3, 2020).
[3] When interpreting a statute, "[t]he first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

8

The legislative history of Section 208 shows that at least one of Congress's purposes in enacting the amendment was to ensure that voters with disabilities would be able to choose their own assistor. The Senate Judiciary Committee of the 97th Congress identified "the blind, the disabled, and those who either do not have a written language or who are unable to read," as a "discrete groups of citizens [who prior to the passing of Section 208 were] unable to exercise their rights to vote without obtaining assistance in voting[.]"[4] S. Rep. 97-417, 62, 1982 U.S.C.C.A.N. 177, 240. The Committee emphasized the importance of affording voters with disabilities unfettered choice in assistants:

> [T]he Committee has concluded that [voters] must be permitted to have the assistance of a person *of their own choice*. The Committee concluded that this is the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter. To do otherwise would deny these voters the same opportunity to vote enjoyed by all citizens.

S. Rep. 97-417, 1982 U.S.C.C.A.N. 177, 240-41 (emphasis added); s*ee generally OCA-Greater Houston*, No. 1:15-CV-00679-RP, 2016 WL 9651777, at *9 (W.D. Tex. Aug. 12, 2016) ("In adding Section 208, Congress recognized that voting is a *process*."), *aff'd*, 867 F.3d 604 (5th Cir. 2017).

The Senate Committee did, however, acknowledge that states may need to adopt procedures in order to administer elections, but stated that "the legitimate right of any state to establish necessary election procedures" was "subject to the overriding principle that such procedures shall be designed to protect the rights of voters." 1982 U.S.C.C.A.N. 177, 241. The purpose of Section 208 was to give voters with disabilities unrestricted choice in their right to assistance, thus it cannot have been Congress's intent to permit state voting laws to directly restrict

---

[4] Prior to the passage of Section 208, the Senate Committee stated that disabled people were in the "adverse circumstance[] of not being able to choose their own assistance[.]" S. Rep. 97-417, 62, 1982 U.S.C.C.A.N. 177, 240.

9

that right. Accordingly, states may not impose additional limits on disabled voters' choice of assistant, other than the two excluded groups in the text of Section 208.

### B. Ballot request provisions in §§ 163-230.1, 230.2, and 230.3

Sections §§ 163-230.1, 230.2(e) and 230.3 of the North Carolina General Statutes limit who can help a voter request an absentee ballot. N.C. Gen. Stat. § 230.2(e) states that "[a] request for absentee ballots is not valid if . . . [t]he completed written request is completed, partially or in whole, or signed by anyone other than the voter, or the voter's near relative or verifiable legal guardian." The same limitation applies to requesting a ballot through an online portal. *Id.* § 163-230.3. Requesting an absentee ballot is part of "voting" and, therefore, is encompassed in Section 208. *See id.* § 10310(c)(1); *OCA-Greater Houston*, 867 F.3d at 614–15; *See also Democracy N.C.*, 476 F. Supp. 3d at 234-35 (holding that provisions of North Carolina election law that relate to various aspects of the absentee voting process are subject to the Voting Rights Act).

The plain language of North Carolina's provisions impermissibly narrows a Section 208 voter's choice of assistant from the federally authorized right to "a person of the voter's choice" to "the voter's near relative or verifiable legal guardian." A "state cannot restrict this federally guaranteed right by enacting a statute tracking its language, then defining terms more restrictively than as federally defined." *OCA-Greater Houston*, 867 F.3d at 615 ("the problem remains that the Texas provisions expressly limit the right to the act of casting a ballot. It should go without saying that a state cannot restrict this federally guaranteed right…").

Defendants' arguments that the North Carolina provision does not conflict with the Voting Rights Act because it serves the same purpose is not persuasive. Defendants assert that, in the name of warding off election fraud or manipulation of disabled voters, states may further restrict those who are able to assist disabled voters with the voting process. Congress contemplated the

10

vulnerability of disabled voters when it discussed providing unrestricted choice of assistants and provided two explicitly excluded groups. States are not permitted to limit the right to assistance further.

Accordingly, N.C. Gen. Stat. §§ 163-230.1, 230.2(e) and 230.3 conflict with federal law and are preempted by the Voting Rights Act. *Gade*, 505 U.S. at 98.

### C. Ballot completion provisions in § 163-226.3

N.C. Gen. Stat. §§ 163-226.3(a)(4) and (a)(6) prohibits "any owner, manager, director, employee, or other person, other than the voter's near relative or verifiable legal guardian, to (i) make a written request pursuant to G.S. 163-230.1 [for an absentee ballot] or (ii) sign an application or certificate as a witness, on behalf of a registered voter, who is a patient in any hospital, clinic, nursing home or rest home in this State or for any owner, manager, director, employee, or other person other than the voter's near relative or verifiable legal guardian, to mark the voter's absentee ballot or assist such a voter in marking an absentee ballot." These prohibitions cover a range of activities that would constitute "voting" pursuant to the Voting Rights Act, including casting a ballot and having that ballot counted. *See* 52 U.S.C. § 10310.

The plain language of these provisions restricts the right of assistance guaranteed to Section 208 voters residing in facilities. The provisions stand as an obstacle to Congress's intent and purpose in enacting Section 208. Accordingly, N.C. Gen. Stat. §§ 163-226.3(a)(4) and (a)(6) are preempted by the Voting Rights Act. *Gade*, 505 U.S. at 98; *see Democracy N. Carolina*, 476 F.Supp.3d at 235 (enjoining the enforcement of N.C. Gen. Stat. § 163-226.3(a)(4) against a single patient in a nursing home).

### D. Ballot delivery provisions in § 163-231

11

N.C. Gen. Stat. § 163-231(b)(1) states that absentee ballots "shall be transmitted by mail or by commercial courier service, at the voter's expense, or delivered in person, or by the voter's near relative or verifiable legal guardian." Mailing an absentee ballot is an "action required by law prerequisite to voting, casting a ballot, and having such ballot counted." 52 U.S.C. §§ 10508, 10310. Therefore, it is encompassed by Section 208. *See Democracy N.C.*, 476 F. Supp. 3d at 234 (applying definition of "voting" to absentee ballot delivery provision). This provision impermissibly narrows the right to assistance by a person of the voter's choice by prohibiting the mailing or delivery of a voter's ballot by anyone except a near relative or legal guardian. Accordingly, N.C. Gen. Stat. § 163-231(b)(1) is preempted by the Voting Rights Act. *Gade*, 505 U.S. at 98.

All challenged North Carolina provisions are shown to be in conflict with federal law, and thus are preempted by the Voting Rights Act. States may not limit the federally guaranteed right of disabled voters to access assistance guaranteed by Section 208. Plaintiff is entitled to declaratory relief, and plaintiff's motion for summary judgement is granted.

### III. Requested Injunctive Relief

Injunctive relief is appropriate when a plaintiff shows: (1) irreparable injury, that (2) cannot be adequately compensated for with monetary damages; (3) the balance of hardships tilts in favor of plaintiff; and (4) equitable relief is in the public interest. *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017).

First, DRNC has demonstrated that if these challenged provisions are enforced upon North Carolina voters, both DRNC as an organization and the individual constituents will be irreparably harmed. For plaintiff, the harm includes continued diversion of resources, frustration of its mission, and an inability to address other voting rights needs of constituents. For plaintiff's constituents, the

12

Case 5:21-cv-00361-BO  Document 39  Filed 07/11/22  Page 12 of 14

irreparable harm is the continued deprivation of their rights under Section 208. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("restrictions on fundamental voting rights [are an] irreparable injury. . . . And once the election occurs, there can be no do-over and no redress. The injury to these voters is real and completely irreparable if nothing is done."); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Williams v. Salerno*, 792 F.2d 323, 326 (2nd Cir. 1986); *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997). Second, the harm to DRNC and its constituents cannot be remedied with monetary damages, as it relates to the impairment of the fundamental right to vote.

Third, the balance of hardships tilts in favor of plaintiff. Plaintiff has demonstrated that its constituents and itself as an organization will be subject to substantial injury and hardship if the status quo is able to continue. In addressing plaintiff's request for injunctive relief, defendants only argue that relief should be limited to individuals in congregate care or those who are specifically disabled. Defendants do not assert that they will be subjected to hardship should injunctive relief be granted.

If the moving party files a motion for summary judgement based on a legal theory in plaintiff's complaint and the opposing party fails "to address arguments made in favor of summary judgment, the opposing party concede[s] that summary judgment is appropriate." *Kettle v. Leonard*, No. 7:11-CV-189, 2012 WL 4086595, *5 (E.D.N.C. Sept. 17, 2012) (quotations omitted). Failing to address arguments made in favor of summary judgement amounts to "an outright failure to join in the adversarial process [and] ordinarily results in waiver." *Alvarez v. Lynch, 828 F.3d 288*, 295 (4th Cir. 2016) (quotations omitted). Defendants have failed to address the balance of hardships in this case. Further, requiring a state to comply with the law is not a

13

burden. *See Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986). Accordingly, the Court finds plaintiff's arguments persuasive.

Fourth, the relief in this case is in the public interest. "[T]he public has a strong interest in exercising the 'fundamental political right' to vote," *Husted*, 697 F.3d at 436-37 (internal quotations omitted), and "[t]he public interest ... favors permitting as many qualified voters to vote as possible," *League of Women Voters of N.C.*, 769 F.3d at 247. The public interest is served by protecting federally guaranteed voting rights in North Carolina. Plaintiff has met all four criteria and is entitled to a permanent injunction.

## CONCLUSION

Accordingly, plaintiff's motion for summary judgement [DE 33] is GRANTED. The parties' motion to expedite consideration [DE 38] is GRANTED. N.C. Gen. Stat. §§ 163-226.3, 230.1, 230.2, 230.3, and 163- 231(b)(1), as applied to voters with disabilities who need assistance with voting, conflict with federal law and are preempted by the Voting Rights Act. Defendants are enjoined from enforcing such provisions against voters with disabilities in North Carolina.

SO ORDERED, this _10_ day of July, 2022.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE